Case number 21-2873 Grow Michigan LLC v. LT Lender LLC et al. Or arguments to be 15 minutes for plaintiff, 15 minutes to be shared by defendants. Mr. Patrick and McCarthy for the Plaintiff Appellant. Good morning, Patrick McCarthy, appearing on behalf of Plaintiff Appellant, Grow Michigan LLC, reserving three minutes for rebuttal. Your Honors, despite the 300 pages or so of briefing in this case, the issue before the court is somewhat of a narrow one. The question really is whether plaintiff, through its 380 plus paragraph complaint, has stated a RICO claim against a defendant. Can I ask you a couple background questions? Yes. There's a bankruptcy that's ongoing, is that right? Yes. And you're a creditor in that bankruptcy? I believe so. I'm not personally involved in that, but yes. Okay. Is Flagstar a creditor in that bankruptcy, too? I don't know the answer to that. Okay. I believe Flagstar may have been satisfied pre-petition in that case. Is your claim in the bankruptcy for the full $5 million? In other words, are you out $5 million? We are out $3.25 million, not the $5 million. They only drew on the $3.25. Okay. Do you have any idea what the assets are in the estate? In other words, is the IP that secured your loan, is that still an asset? Or do you own it because you were secured on it? We were harmed by it. Our position is that Grow Michigan, as a result of the default by Lightning, that with our security interests, that we had a vested interest and we owned it. They then filed for bankruptcy. And as a result of filing for the bankruptcy, it became an asset of the estate. Entities related to some of the defendants bought the assets out of the bankruptcy, is my understanding. But didn't you have a security interest in the IP? Wouldn't you be a secured creditor and would have priority on it? We do, but the question is whether we lost that or not. That's really the question. The harm was done beforehand when we lost it and they filed for bankruptcy. Okay. In this case, you're seeking treble damages. Yes. So even if you're compensated there, you still think you have a claim under RICO for treble damages? The claim is not against Lightning. The claim is against the other defendants for their wrongful conduct. In other words, if you're compensated, I'm not sure this is what Judge Nalbandian was asking, but if you were compensated fully through the bankruptcy, you'd still think you have a RICO claim for treble damages? If we were compensated in the bankruptcy, but I don't believe we were not, we would because the RICO statute does have that penalty provision for the wrongful conduct that's alleged. And that's an available remedy by the federal statute. So yes as to that. Just turning to the predicate acts, I just want to talk about a couple of those. We've got bank fraud, misappropriation of trade secrets, and wire fraud. We only need two to succeed. My question on the bank fraud is, I mean, assume for a second that you can assert that as a predicate act and obviously you're not a financial institution. How were you injured by reason of that bank fraud? That's what I'm not. You look like a creditor that was injured by someone else and maybe that's a fraud, but I'm not sure it's a RICO. So the only reason my client, Grow Michigan, entered into this transaction is if there was additional financing from various folks. One of the folks was Flagstar Bank and the fraud that was put upon Flagstar Bank is what constitutes the indictable offense under RICO. The question then under the relevant law is how were we harmed? We allege that we were harmed because we would not have made the loan had we known that there was fraud upon Flagstar Bank. Isn't that true for basically every creditor of a company? You're always giving money to a company, loaning it, maybe it's true for shareholders, because you think they're going to use the money wisely, not engage in criminal conduct, and you're going to get return on your investment. So I know you have a specific theory here, but isn't it true that every creditor expects the company that they're investing in to not engage in wrongful conduct? And it seems like this is a sort of Pandora's box. If you can sue here under RICO and show causation, why can't any creditor essentially of any company where there's any wrongdoing always sue and bring a RICO theory? And then one difference is there was in fact fraud here. Well, in a future case there's fraud. I don't know. Someone defrauds the company. But the issue here is we would not have made the loan. This was all based on express representations that there was going to be this other series of credits and loans from various folks. And the allegations in the complaint are that we needed all of this capital, all of the loans, so that they could go from a startup to actually buying equipment operating the business. And none of that happened here, and it was a scheme to defraud all of these creditors, including Flagstar Bank. Why aren't those more naturally wire fraud or I would suppose common law fraud as opposed to the bank fraud? The bank fraud seems odd because your Flagstar is the one that's being defrauded, right? It's the bank. It's the hook to get bank fraud. Wire fraud, I would think you could just say, if we had known the full information about the payoff letter and the payoff, or if we had known that these were sham lines of credit, or if we had known whatever, we wouldn't have made this loan. I mean, I take it that's your argument. But why is that not more naturally would have been part of the wire fraud? The only wire fraud I can see that's fled in the complaint, and maybe I'm wrong, is the $400,000 fee that arose out of the million or million aid or whatever that loan was. Is that right? No, we also have a wire fraud allegation regarding the bank fraud. So there's at least two, the wire fraud related to the bank fraud and wire fraud related to the $400,000 payment to Silico. Is that in the complaint itself or in the civil RICO statement? I guess I've missed it in the complaint. I believe it is. I believe it's in paragraphs. Is it around paragraph 234 maybe? Yeah, 233 to 248 are the relevant paragraphs. And I believe that's where you would find those allegations. Why isn't that all the same? You need a pattern of racketeering activity. And that to me is sort of one set of conduct. All of that conduct is related to the $5 million essentially that GRO gave to Lightning. And you need to show a pattern of racketeering activity. So you need to show conduct that harmed GRO in another way. Like maybe they gave another $5 million loan and there was other fraud that hurt them with the other $5 million loan they had. But this all seems targeted to the one loan. I guess I'm having trouble figuring out why this is a pattern of racketeering activity. Well, there was one loan. There also was a subordination agreement. In other words, everybody else, the Shamu loan was subordinate to not only the Flagstar loan but the GRO Michigan loan. We had a security interest in the assets. We were the owner of those trade secrets, which makes us different from everybody else. To your question about why don't you just rely on one, it's the same conduct. The RICO statute allows us to rely on all the available remedies. Bank fraud would be one. My question was about the pattern. It requires a pattern of racketeering activity. So this is all conduct aimed at one target, one goal of the $5 million. And I would think a RICO scheme would require and then we did some other conduct that deprived the bank of some other loan they gave us or somehow injured the bank some other way to develop a pattern as opposed to just one general instance of fraud. Well, none of this would have come together had these misrepresentations not been made, not only to the bank but to us. There's only one injury, right? I don't know if Judge Radler is getting it. But I mean, there's only one injury here, right? You want the $3.25 million. It's one single injury. There may be multiple acts. I don't know. But it's only leading to one path here, right? Much better said than done. That is our injury and that's all that's required is that there be that injury and it can stem from a number of different predicate acts. Just to address the pattern point, I don't think the different acts can all be targeted at the same $3 or $5 million. I mean, RICO is about an enterprise, right? It's about organized crime. Committing a murder, an extortion, a robbery, a protection racket, whatever it is, all leading to separate injuries but coming from one enterprise as opposed to here. I know you have multiple acts but where's the pattern? We're looking for the pattern. The case law that we cited talked about the pattern doesn't have to be over a long period of time. It can be over a period of months and there's case law that talks about it. And the pattern may have been short-lived here. The pattern was to get the loans, get the LTE loan paid off, reduce the investment that some of the principles of LTE... I think it's a timing question. I think it's a quantity question, I guess. It's not timing how long it took. It's sort of the number of injuries it caused to the target of the RICO conspiracy. Well, the pattern involved a number of different actors and acts. And it started with convincing that the loans be given. And it continued with paying off some of the shareholders of the prior lender. The concern I have is this is a pretty weighty statute, right? And I think Congress sort of understood it to be a narrow statute in that sense. And it had pretty high requirements that you have to meet to show a RICO case. And so one of those is a pattern. You have to show an enterprise, as Judge Van Dien said. And I don't think you've demonstrated that. But I don't think Congress meant to allow trouble damages for any sort of wrongdoing that occurs in the world that involves two instances of wire fraud or something. Let me say this in terms of the record we have before Your Honors. The lower court didn't rule based on pattern. The lower court ruled that there can't be bank fraud because we're not a bank. And then ruled on the misappropriation that various things were not pled appropriately. Was there any cases? So that was the causation. The other flaw in your case potentially is causation, right? Yes. So what's the best case you have either for your bank fraud or maybe for your trade secrets case that shows that kind of a third party. You can show a causal pattern or the approximate cause requirements under RICO where it's sort of a third party has been injured. Well, we cited the bridge case, the U.S. Supreme Court 553 U.S. 639. The bridge case basically says that causation is not limited to only those that would rely on the fraudulent misrepresentation. Rather the test is whether the alleged violation led directly to. Is that discussing common law approximate cause or approximate cause under the RICO statute? And if it's the latter or if it wasn't the latter, if it was the former, aren't they different? They may or may not be different. I think it's. Hasn't the Supreme Court said they're different? I don't recall exactly if they made that distinction, Your Honor. Holmes or Sedema? Well, Holmes said that the RICO statute sweeps broadly. That's what Justice O'Connor indicated. And Justice O'Connor indicated that you don't just look at the type of plaintiff that's at issue. The question is whether or not there was, you know, the relevant causation. In this case, the district court, you know, kind of missed that step. That's your best case? In my mind, this case kind of comes down to this causation question in a lot of ways. That's your best case? Is that a Supreme Court case? No. The Wallace case, the Stock, Stooksbury case from the Sixth Circuit, that Stooksbury is what involved fraud causing a plaintiff to contribute capital followed by misappropriation of plaintiff's funds. That case is right on point with what happened here. We were duped into giving this loan based on misrepresentations to Flagstar, to us and to others. We contributed the capital and then it was misapproved. We're at the pleading stage. We have to allege that. We did allege that. That case supports it directly on point. And then you combine that with what Wallace said about, you know, whether there's a causal connection between the injury and the conduct is logical and not speculative. We think we've got that there. Now, the district court didn't even, you know, reach that case. And if there was a flaw in that, we would logically get an opportunity to amend. And that, the opportunity to amend was not given to us. Okay. Okay. You'll have your rebuttal. Thank you. We'll hear from counsel for LT Lender. Is that right? Yes, Your Honor. James Pryzma on behalf of four of the appellees, LT Lender LLC, John and Jerry Reinhart, and Bruce Campbell. I'll be speaking first for four minutes. Can I ask you just to, I mean, it's quite unusual to have four lawyers arguing on one side. I would probably recommend maybe against that in the future unless it's really necessary. But are you, are you covering one issue and someone else is covering another issue? So if we ask you about something, you say, well, that's not mine. Yes, Your Honor. There are two issues that I was going to focus on this morning. The bank fraud issue and why Grow Michigan cannot allege bank fraud because it's not a financial institution. And then the inadequacy of the pleadings as to my clients because there's no connection shown, no who, what, where, when about. On the bank fraud issue, is it your theory that if you're not a bank, you can never bring a bank fraud claim? Well, there are two issues. One, the cases have uniformly held that you cannot bring a bank fraud as a predicate act if you're not a financial institution. And there isn't, there hasn't been any decision that says that we're going to open up RICO and we're going to allow RICO to sort of subplant ordinary breach of contract law and remedies that creditors would otherwise have. So, you know, the bank. You're saying there's no set of facts that would ever allow a non-bank to bring a bank fraud? Well, there hasn't been a set of facts that succeeded to date. And we haven't seen, and certainly those facts are not here. But why, I mean, RICO says any person. And Bridge says you don't need first party reliance for a fraud. Why wouldn't you be able to use it as a predicate act? Well, but Bridge also says there still has to be a connection. And that's the problem. And that's where the cases have gone. There has to be a connection between the bank fraud. Well, that's a separate question, right? I mean, there's a directness requirement for sure. Sure. For causation. But you're talking about if I'm not a financial institution, I'm automatically cut off. That may be true for an underlying bank fraud. But for a RICO predicate act, I'm not sure that's true. Right? There could be a distinction between whether I can actually bring a bank fraud claim as the plaintiff and whether I can bring a RICO where one of my predicate acts happens to be a bank fraud, where I am not the financial institution. But even if we look at the Bridge case, what happened there was the fraud itself that was alleged, the mail fraud, caused the injury. And that was the connection. And that was why the court said the reliance wasn't necessary. There didn't have to be reliance on mail fraud, but there still had to be the connection. And so when you look at the bank fraud statute, which was... But why isn't there a connection here? I mean, they say we were induced to make the... There needed to be some other loans made. You told us that you had this $10 million line of credit or you told us you were going to take $3 million of this and pay off this other loan to your client, except $1 million was for something else and you didn't tell us that. All of that combined induced us specifically, not just any creditor, but this creditor into making this loan. How is it that's not direct enough? Well, the loss here is not the making of the loan.  I mean, the entering into a loan with certain protections, representations. Remember, the loss is the financial loss when it's not paid as agreed and when their bargain for remedies are not met. Here, not only do they have a security interest, they have guarantees. And so to suggest that the loss occurred at the inception of the loan is not correct. The complaint alleges that the loss is a financial loss. The financial loss is after there's a breach and after the bargain for remedies fail. And so it is not the upfront allegations that gave rise to any injury. It's after the fact, and actually, as the complaint tells us, it was the proxy fight. It was the warring for control between rival shareholder camps that actually caused anybody to pay or not pay going forward. It had nothing to do with the actions at the inception. And I just want to say briefly that, again, there's no who, what, where, or when alleged as to my clients involved in any of these misrepresentations to any financial institution. Are you talking about with regard to a bank fraud or with regard to the wire fraud or both? With regard to any of them. The only allegation is that my client sent a payoff letter. Well, a payoff letter that didn't disclose everything. Well, no, it disclosed the amount of the debt and it disclosed that they were going to release their security interest. There was no obligation on my client to provide due diligence to Grow Michigan. Well, I assume that's true at Common Law would be for sure. It wouldn't be a great failure to disclose case, I assume, at Common Law. Is there any difference for a wire fraud? No, there's no duty whatsoever on my clients. They disclosed exactly what the contract said.  Thank you, Your Honors. Thank you. Ready? Go ahead. Yes, good morning, Your Honors. Stuart Best of the firm of Weltman, Weinberg, and Reese on behalf of Defendant Anna Pelle, Paul Schamo. I've got a few items, but to begin with, to answer a question that was previously asked, Flagstar Bank has been paid in full. They were paid in full some time ago. That's why they're not part of any part of this action. So as to a bank, they're paid off. They're out of this case. Why did they get paid off and not Grow Michigan? Between Grow and them, I'm not sure exactly how they decided. So are they not a creditor in the bankruptcy? They are not. Does that have anything to do with the bank fraud, though? If they're paid off later on, does that undo the bank fraud? First of all, of course, we take issue with any fraud whatsoever. I was just wondering if it was relevant to the core RICO. Yes, it does. Because if they, in fact, were a plaintiff in the case, they would have the right to bring the bank fraud. And to answer the previous question, I believe the case law is very clear. Unless you're a financial institution, you cannot bring a bank fraud case. Fifth Circuit has ruled. We've got stacks of cases in our brief. Right, but I understand that part. But does it mean it can't be a RICO predicate? It doesn't necessarily follow in my mind. Yes, I can't bring a direct bank fraud. But I'm bringing a RICO, and I've got a predicate act. So why is that not possible? Case law doesn't support that. And the case law analysis is extensive as to the fact that that bank fraud in itself must be brought by a bank. Is this because of the by reason of requirement in the RICO statute? I would say so, yes. Why? Well, you said you would say so. Why would you say so? Because by reason of the bank fraud, they have to bring that fraud. How can another bring that fraud on their behalf? So, for example, if Flagstar did bring this, that's fine. But Grow Michigan is not a financial institution. And they're alleging that a fraud was committed as to someone else, not to them. How can they then utilize that as a predicate act? But does the RICO plaintiff have to be injured by every, have to be specifically injured by every predicate act? I mean, if I'm a victim of a kidnapping or whatever, can I also say that as part of your RICO enterprise, you murder other people and commit extortion or whatever it is? I believe RICO is set just for that purpose, is that you have to allege those predicate acts as to occur. Right, but do I have to be victimized by every predicate act? Because that would be the bank fraud question, is do I have to be victimized by the bank fraud? Or can I just allege that the bank fraud was a predicate act? I believe you need to allege the bank fraud as a bank fraud, of course. To answer your question another way, most of the cases flipped and went to proximate cause. And so they argue that issue, but then they flip over and end up with an approximate cause decision. And they don't even really directly address it, yet they state in almost every case, unless you are a financial institution, that's the black letter of the case law. Unless you're a financial institution, you cannot bring a bank fraud case as a predicate act. So they do state that. And the logic is extensive, but in four minutes, now a minute... But there's a difference between whether I'm... I could be injured by something but not have a right of action, maybe. I mean, it could be... Let's say, in theory, I could be injured by your bank fraud, even though I'm not actually the direct victim. And then we just get into a causation question, which is what we're talking about now, which is the directness requirement, right? The proximate cause requirement? Correct. The proximate cause requirement's not met then. So, no, I don't believe that you can then utilize this bank fraud as, in essence, a predicate act. Right, but not because I'm not a bank per se, but because it's not direct. I would say the directness issue is a problem. You need to have that directness, and I don't see it in this case. And again, bank fraud is not an issue. If I may hit one issue very quickly that I hit in my brief in opposing counsel and plaintiff's appellant has not addressed is this issue as to trade secrets. The trade secrets case, if the court will note, in three instances in my brief, I noted that Grow Michigan filed a lawsuit against Mr. Robert Drake for these trade secrets misappropriation. That case was dismissed, and not only dismissed, but it was dismissed by consent with prejudice. They walked away from the entire misappropriation side under state law with prejudice. How can they now act and say that that actually occurred and utilize it as a predicate act? Now, this occurred some time ago, but not as far as the briefing. Is there some res judicata or some other legal effect? Clearly, there'd be a res judicata because, in fact, it's a dismissal with prejudice as to their claims of trade misappropriation. Okay, fine. It would be res judicata. You can't bring the suit again. Why can't I use it as a predicate act, though? Why can't you? Because you're saying it didn't occur. I don't know. What are the settlement agreements? There was no settlement. This was a dismissal with prejudice. There was no settlement. It was a flat-out dismissal. Right, but you're saying a dismissal. They lost it on a motion to dismiss. No, they consented to and dismissed the case. But that doesn't... I mean, you're saying they admitted that it had no merit? Yes. Is it in a document, or they just dismissed the case? Is it a dismissal with prejudice by consent? So that means they can't bring another direct lawsuit on the trade secrets claim, but why does that amount to an acknowledgment that there wasn't any trade secret misappropriation? First of all, Mr. Robert Drake is a party in this action. They're alleging against him as part of one of these RICO actions, one of the predicate acts, the same exact claim. They're making that claim in this court directly as to Mr. Robert Drake as one of the actors in this case. So, yes, I believe it completely knocks out that entire argument as to trade secrets. And, as the court noted, they don't have ownership in these trade secrets. That was simply collateral that they never exercised. So we don't think the claim's foreclosed. Don't they argue that they're right vested in the trade secrets? They claim... Enlightening default. They use the term vested. What does that mean? Under UCC law, under any action, they never took an action to take possession of these assets. And the bankruptcy court sold them. The bankruptcy court took all assets in the bankruptcy trust and sold them. It just seems like the fraud is more direct, or the injury is more direct, if they are now the owner of the trade secrets and someone has misappropriated them. No, because they're not... How can you steal something you don't... How can something be stolen from you that you don't own? I was assuming... I was giving some credit to the argument that their rights are vested in... What does vested mean? That's the funny part. They would say owned. They would say owned. I think they would say they owned them at that point. That was their property. And their property was essentially stolen. It's not using two factors. Number one, they never took an action to take possession of those assets under the UCC, simply as a secure creditor. Did they have a perfected security interest? They had a perfected security interest. They never exercised. And second of all, the bankruptcy court would have that asset of an estate because until they took possession or filed an action, the bankruptcy court would... Well, the bankruptcy court sold them. And they never objected to the sale. They didn't say to the bankruptcy court, these are my assets. I mean, I assume you could make a claim in the bankruptcy court as a secure creditor in order to jump the line, right? They could, but they haven't. And the assets have been sold. All the assets have... Yes. Okay. Is the bankruptcy settled or is it still going? There's still some proceedings, and I'm not sure of the total proceedings, but they're still going forward. Okay. There's some ancillary cases that are proceeding. All right. All right. Thank you. Okay. Next up. Good morning. Evan Burkholder on behalf of the defendant Damian Kassab. In my brief time, I wanted to mention two points. In the district court proceeding, Grove, Michigan relied upon allegations of five separate predicate acts. Three of those acts involved bank fraud. Only one of the acts involved wire transfer. In the lower court, Grove, Michigan made no effort to identify more than one act of wire transfer. The district court's decision was based on the fact that Grove, Michigan had not alleged two or more predicate acts. They made no effort to amend their complaint to allege multiple acts of wire fraud. Now, for the first time on appeal, they've changed tack and they're now claiming that there's some multiple number of unknown, undifferentiated wire transfers. Would it just be a matter of relabeling what they alleged in the complaint? In other words, the 400K was, my understanding, that was the wire fraud allegation below. Right, the one million, whatever it was, and the finder's fee that went to your client, the 400. Okay. The payoff letter not disclosing enough and the sham, alleged sham lines of credit, would also, in my mind, could possibly have been pled as a wire fraud. Is it just a matter of they just missed, if they had just labeled them as wire fraud, there would be three wire fraud acts? That could very well be. The point I am trying to make, Your Honor, is that the general rule is that a party is not permitted to improve its case on appeal. What this court should be considering is the case that was presented to the district court. Is this civil RICO statement, and I know that it comes from the manual on complex litigation, is that a pleading? Is it part of the pleading in this case? It was treated, yes, sir, as a part of a pleading. But even with that pleading, their case was based on a single instance of wire fraud. Now they are trying to change that. They definitely said that one wire fraud was enough because they had a second predicate act and they had a whole menu of other predicate acts they thought would give them the second one to show a pattern. Does that by itself exclude them from saying there are other instances of wire fraud but we only need one because we have these others to complement it? I believe they were required, sir, at the district court level to identify all of the predicate acts on which they based their complaint. They only identified one act of wire fraud. I'm simply trying to make the point, sir, that they tried to change TAC in midstream. One other comment... Should we allow them to amend their complaint? A bigger part? Should we allow them to amend their complaint? Could we remand? I don't think this court should permit them to improve their position on appeal. I think this court should address the matter that was raised at the trial court level. One additional comment, if I could quickly get it in, sir, with regard to the trade secret count as it pertains to Damien Kassab. Here is all that they claimed in paragraph 226 of their amended complaint. Quote, Drake was acting at the direction of some or all of the defendants. I don't think that statement is sufficient under any pleading requirement to assign a predicate act of trade secret violation against Damien Kassab. Is that an enterprise argument, or is that a causation argument? Well, my argument, sir, is that that's a deficiency in the pleadings. If they're going to blame and somehow tie Damien Kassab to a trade secret violation, they have to allege how he was involved in the trade secret violation, the downloading of data by Robert Drake, an employee of Lightning. All they've been able to say in their pleading is that Drake was acting at the direction of some or all of the defendants. Well, he wasn't acting in our direction, and I'm not sure who they mean by some or all. I think their pleading is deficient. Okay, great. Thank you, sir. Thank you, counsel. Good morning, Your Honors. Nick Gorga. I represent SILICO, LLC. I have three minutes. SILICO, Your Honors, appears in only 16 paragraphs of the 380-paragraph complaint. The only substantive allegation against SILICO is that months after Grow Michigan made its loan to Lightning, a third-party defendant, Shamo, made a payment of $400,000 to SILICO. Oh, so the payment was made to the company, not to Kassab? The payment was made to SILICO, LLC. Kassab does have a relationship to SILICO, LLC, but the payment was made to SILICO, LLC, and it was made as part of a larger loan from Shamo to Lightning, of which $400,000 of that much larger seven-figure loan was then given to SILICO, LLC as part of a payment for work that they had done. And again, I think what's very important for my client is that this occurred months after the loan was made from Grow Michigan to Lightning. So to say that this was any sort of reliance done in connection with it... My understanding is you're making like a standing argument, right? So we're making, I think, our two principal arguments. First, everything the counsel for the other appellees has said here applies to SILICO, LLC in terms of that's the way that the district court looked at it. They didn't separately analyze SILICO, LLC. I think SILICO has two specific arguments that are unique to it. One is that there's only one conceivable predicate act aimed at them, which is this wire fraud, which we believe fails on the merits. Second is we do believe that even though the district court found Article III standing as to the case in whole, we believe we have a separate unique argument at SILICO in that there's no injury that's fairly traceable to the actions of our clients. So we believe that those are two unique bases upon which... You're just alleged to have been the recipient of the money but not involved in whatever the underlying action was? Correct. And I take it the argument is that the million dollars or whatever it was that led to the fee was a fraud. They're saying it's a fraud. I don't know. It could be a fraud. It seems like maybe it's just a breach of a covenant or something, but whatever. You're saying there's no allegation that you were part of the actual liability part of it? Correct. There's no such allegation. And in terms of injury, if there was some sort of wrongdoing in the loan that was made from defendant Shamo to Lightning... Would you be a necessary party because you have the... you, in theory, would have the funds and would have to disgorge them? Well, we weren't originally named in the complaint. We were added as sort of an after-fact, we believe, as part of the overall strategy to try and take control of the company because Salika was affiliated with Mr. Kassab. So we think we were added as an after... I'd actually, if I could, Your Honors, just on the point of amendment to answer Judge, your question previously. There was already a First Amendment. The RICO statement was added during that First Amendment. When the case was dismissed, Grow Michigan said, we don't want to amend, we want to take this and have it immediately sent off to the Sixth Circuit. That civil RICO statement is part of the first... technically, is it part of the First Amendment complaint? That's my understanding. They were asked or told to add the RICO statement to their First Amendment. Okay, great. Okay, thank you, counsel. Of course. Thank you. Thank you. I want to address a few different points. First, on the bank fraud, I think it's pretty clear that the statute does not have any restriction on the type of person that can sue. It's just, you know, was there an indictable offense and was there injury resulting from that? Well, I think RICO doesn't... Are you talking about RICO or are you talking about the bank fraud statute? I'm talking about RICO. Wait, I don't disagree with that, but you agree that under the underlying bank fraud statute, you have to be a financial institution, right? Yes, and Flagstar satisfies that for this purpose. Flagstar was defrauded. Right, but they're not the plaintiff. No, but we just have to be injured from a predicate act. The predicate act can involve Flagstar. Yeah, but you're already... You could not bring this claim, a direct bank fraud claim, but we're using the RICO statute, which kind of ratchets the whole thing up a little bit to use RICO, and then we're saying, ah, but you can sneak in, even though you're not a financial institution, because you're injured, which was my question to your brother counsel. Yeah, why can't you be? But I still don't see why... I mean, you still have to have some directness, right? I mean, all these cases, directness is the key, and I'm not sure I see the directness here. The directness is that we never would have made the loan had there not been these misrepresentations in bank fraud, plus the other misrepresentations that were made and other conduct that was made. It's a combination of various things, but we're entitled to... We were injured as a result of the bank fraud. You were injured because they couldn't pay your loan back, right? I mean, I assume that they intended to run this as a business that would eventually pay your loan back, right? Are you saying that the whole thing was a sham? We're saying the whole thing was a sham, Your Honor. Yes, we are. Just to... To take control of Lightning, to reduce their responsibility, take the trade secrets, and then go to another company. That's what we're alleging. It was a plan from the start. It was a scheme from the start. You're saying that there was never... From the beginning, starting with the sham lines of credit and the payoff letter, you were never going to get your $5 million back. They never intended to get... They were going to take your $5 million. You were never going to get it back. Because they were going to drive the company... Is a U.S. attorney looking at it? I mean, you're basically alleging a crime, right? I don't know if that's true or not true. I just don't know. But, you know, clearly, you know, in our view, we were injured. We never would have made the loan in the first place because you had to have the combination of things. But... And the intent here and the... Yes, Your Honor. So you're saying, though, you're saying that your injury was... That you were injured by making the loan, not because of all the things that then happened, which resulted in your not getting paid back. The injury itself, you're saying, is that you made the loan. That we made the loan. We wouldn't have made the loan otherwise. No, no, no, I didn't say that. I know you're saying we wouldn't have. But I'm saying you're telling us that your injury is that you did make the loan. Yes. Okay. And we lost our rights associated with that. We lost the security interests that we had in the intellectual property and the trade secrets. And that was the injury. Did you raise the... This vesting point, did you raise that in the district court? Yes, we did. I believe we did. And then we have that chart on page 36 of our brief where we talk about the vesting and the allegations that are in the complaint and that we own it. So we're saying as a result of the fault, we in fact own it. It's on page 36 in the chart and there's a section right on that. If I may just briefly... Briefly. I think the community health case that we cited about the right to amend, we get one chance to amend, applies here if that is necessary. Did you ask the district court? We were not given that opportunity. We were dismissed with prejudice. And so our only choice was to go. What kind of an opportunity do you need to file a motion to amend your complaint? Well, the case was dismissed, Your Honor. Maybe you could have filed a motion for reconsideration, but the case is over when the judgment was entered, dismissing the case. That's true, but I think we've allowed that under Rule 60 or Rule 59. The years are there, but okay. We're saying we would like that opportunity to amend. And then I would just briefly, as just like... You can also, by the way, put it in your opposition to the motion to dismiss, right? In the event this court dismisses, we would like an opportunity to amend. Right, but I think it's implied in all of these cases that you have that right. In almost every case where there's some finding that something was not planned appropriately, you get the right to amend. I would encourage also, Your Honors, to look at Paragraph 125 of the complaint as to the Salaico allegation. And it says, Salaico acting through its principal, Kassab, and Kassab controlled Salaico, knew that the $400,000 payment was a sham payment and that this payment was part of a fraudulent scheme to confer additional capital to Kassab in a wrongful attempt to subrogate plaintiff's security interests. So I think that answers one of your questions. Well, I don't think that necessarily means they did anything. I mean, alleging knowledge isn't the same thing as alleging a fraud or a tort. No, but if you use that paragraph in combinations with Paragraphs 120, 122, 124, and 233 to 248, I think you'll see the connection. Okay. All right. Thank you, Counsel. Thank you all for your arguments and your briefing. The case will be submitted.